The Honorable Sally Thompson State Treasurer Landon State Office Building, Room 201-N Topeka, Kansas 66612
Dear Ms. Thompson:
As chair of the pooled money investment board you request our opinion regarding which banks can be approved as custodial banks for safekeeping pursuant to K.S.A. 1992 Supp. 75-4218(b)(2).
The relevant part of K.S.A. 1992 Supp. 75-4218 states:
 "(a) All state bank accounts shall be secured by pledge of securities as provided in this section.
 "(b) The bank, savings bank or savings and loan association receiving or having a state bank account shall deposit or cause its agent, trustee or an affiliate bank having identical ownership as the bank receiving or having such account to deposit, securities owned by it, or by its agent or trustee holding securities on its behalf, or by such affiliate bank, in one of the following ways:
"(1) Deposit with the treasurer.
 "(2) Deposit with a bank having adequate modern facilities for the safekeeping of securities and doing business in the state of Kansas and which facilities shall have had the prior approval of the board. Any such bank receiving securities for safekeeping shall be liable to the state for any loss suffered by the state in the event such bank relinquishes the custody of any such securities contrary to the provisions of this act or rules and regulations adopted thereunder. No such deposit of securities shall be made in any facility owned or controlled directly or indirectly by the bank depositing the same."
You state in the opinion request that prior to the introduction of interstate banking in Kansas, the pooled money investment board was of the opinion that the phrase in K.S.A. 1992 Supp. 75-4218(b)(2) which required the bank to be doing business in Kansas precluded any out-of-state bank from providing custodial service. You now request our opinion as to whether a Kansas bank can provide custodial service when the securities will be held in the Kansas bank's correspondent safekeeping account at an out-of-state bank, with the Kansas bank issuing the safekeeping receipt for the securities.
Based on this scenario, you ask:
 "1. Can the board approve a Kansas bank under K.S.A. 75-4218(b)(2) and accept safekeeping receipts from the Kansas bank when the actual securities are being safekept by an out-of-state affiliate bank?"
In connection with this question you ask:
 "2. In the event the out-of-state (affiliate) bank is holding the securities upon which the safekeeping receipt is issued, can the board approve the out-of-state affiliate bank as the custodial bank under the present language of K.S.A. 1992 Supp. 75-4218(b)(2)?"
First, we must consider what constitutes "adequate modern facilities for the safekeeping of securities." According to information you have provided, the common practice is for the depository bank to acknowledge receipt of the securities from the depositor and to hold the securities in book entry form. It is not the standard practice, as it was years ago, to actually keep the bearer paper in the bank vault. Therefore, the term "for the safekeeping of securities" needs to be read in terms that are practical and accomplish the goal of safety and security, instead of actual physical control of the securities.
Because the depository bank and the Kansas bank with the state account enter into a deposit contract, the Kansas bank with the state account has the obligation to ensure the safety and security pursuant to the joint custody receipt and therefore such a practice is acceptable.
Next, we review what constitutes "doing business in the state of Kansas." All state banks and corporations must receive approval of the state banking board (K.S.A. 9-1801, as amended by L. 1993, ch. 7, sec. 2 and K.S.A. 9-2011 respectively), and a certificate of authority from the state banking commissioner (K.S.A. 9-804, 9-2016), before they are able to engage in the business of banking. Furthermore, no bank, the home office of which is located outside Kansas, may establish or operate a branch within the state (K.S.A. 9-813). With the exception of national banks, to be authorized to engage in the business of banking in Kansas a bank must be so authorized by the state banking board and the state bank commissioner and its authorization is to do business at its home office in Kansas and branches located in Kansas (K.S.A. 1992 Supp. 9-1111). A national bank obtains its authority to engage in the banking business pursuant to federal law, which limits it to doing business in the place specified in its certificate of authority and in branches located within the same state as its main office. (12 U.S.C. § 81, 36).
Based on these statutes, it appears that to be doing business in Kansas, and an eligible depository of pledged securities, the main office of a state or national commercial bank must be located in Kansas. Therefore, it is the opinion of this office that the board may approve a Kansas bank pursuant to K.S.A. 75-4218(b)(2) even if the account reflecting the securities is with an out-of-state affiliate bank. However, the board will need to determine if the depository bank has adequate ability to ensure the safekeeping of the securities. The board may not approve an out-of-state affiliate bank as the custodial bank because the bank could not satisfy the "doing business in Kansas" requirement.
Next, you request our opinion about the following situation:
 "We have also received a request from another Kansas bank to act as a safekeeping agent, but with the intent to hold the securities in their safekeeping account at a non-affiliated out-of-state correspondent bank, again with the Kansas bank issuing the safekeeping receipt.
"Our Question:
 "Can the board approve a Kansas bank under K.S.A. 75-4218(b)(2) and accept safekeeping receipts from the Kansas bank when the actual securities are being safekept by a non-affiliated out-of-state bank?"
Once again, as we stated before, a Kansas bank can have a state account if the board, after reviewing the safekeeping system, finds that it is adequate. The bank does not need to keep the actual securities here in Kansas.
"For purposes of safekeeping pledged securities under K.S.A. 9-1405(b), would common ownership by the same bank holding company equate to `owned or controlled directly or indirectly', thus prohibiting affiliates from safekeeping each other's pledged securities?"
K.S.A. 9-1405(b), as amended by L. 1993, ch. 207, sec. 1, states, in pertinent part:
 "No bonds or securities pledged to secure public deposits shall be left for safekeeping in any safe deposit vault owned or controlled directly or indirectly by the bank, state or federally chartered savings and loan association or federally chartered savings bank securing such public deposits." (Emphasis added).
Essentially, you question whether the affiliates of an out-of-state bank holding company could safekeep the pledged securities for one another. To answer this question we must determine what is meant by "owned or controlled directly or indirectly."
K.S.A. 9-1719 defines control in the context of change of control, and states that "`control' means the power directly or indirectly to direct the management or policies of a financial institution or to vote 25% or more of any class of voting shares of a bank."
The Kansas definition of a bank holding company is as follows:
"(a)(1) `Bank holding company' means any company:
 "(A) Which directly or indirectly owns, controls, or has power to vote 25% or more of any class of the voting shares of a bank or 25% or more of any class of the voting shares of a company which is or becomes a bank holding company by virtue of this act;
 "(B) which controls in any manner the election of a majority of the directors of a bank or of a company which is or becomes a bank holding company by virtue of this act;
 "(C) for the benefit of whose shareholders or members 25% or more of any class of the voting shares of a bank or 25% or more of any class of the voting shares of a company which is or becomes a bank holding company by virtue of this act, is held by trustees; or
 "(D) which, by virtue of acquisition of ownership or control of, or the power to vote the voting shares of, a bank or another company, becomes a bank holding company under this act." K.S.A. 9-519.
In this scenario, although the affiliates would not directly control one another, the bank holding company would most likely be in the position of control due to the fact that the bank holding company would set the policies and procedures for the affiliates and the affiliates' officers and directors would report to the bank holding company. In Attorney General Opinion No. 87-79 we opined that K.S.A. 75-4218(b)(2) "prohibits a bank from depositing its pledged securities for state bank accounts with a custodial bank which is owned by the same holding company as the depositing bank." Therefore, since the language in K.S.A. 9-1405(b) and K.S.A. 75-4218(b) both state that the pledged securities may not be deposited in a bank which is owned or controlled directly or indirectly by the depositing bank, we reach the same conclusion as was reached in Attorney General Opinion No. 87-79 and opine that public funds cannot be deposited in a bank which is owned by the same holding company.
Your final question involves four banks, which are not owned by the same holding company, yet the controlling interest of each bank's stock is commonly held and the board of directors overlap each other; however, the common owners having controlling interest do not sit on any of the boards of directors. One bank would like to act as custodian for securities pledged against public funds deposited at the other banks.
"1. For purposes of safekeeping pledged securities under K.S.A.9-1405(b), would banks with common controlling shareholders and overlapping directorates be prohibited from safekeeping pledged securities for each other?
"2. For purposes of safekeeping pledged securities under K.S.A.75-4218(b)(2), would banks with common controlling shareholders and overlapping directorates be prohibited from safekeeping pledged securities for each other?"
Once again, we are dealing with the same issue of whether there is indirect or direct control. In this situation if a majority of the board of directors overlap or if a common director has the ability to directly or indirectly control both institutions or there are common owners the issue of indirect/direct control is even more possible. With common directors, the directors could use their status so as to enable one banking corporation to dictate to the other. Thus, banks with common controlling shareholders, or an overlap of a majority of the board of directors, or common directors having the ability to directly or indirectly control both institutions, would be prohibited from safekeeping pledged securities pursuant to K.S.A. 9-1405(b) and K.S.A. 1992 Supp. 75-4218(b)(2) for each other.
In conclusion, it is the opinion of this office that a Kansas bank can provide custodial service when the securities will be held in the Kansas bank's correspondent safekeeping account at an out-of-state bank. However, the board may not approve an out-of-state affiliate bank as the custodial bank pursuant to K.S.A. 1992 Supp. 75-4218(b)(2). The board can accept safekeeping receipts from the Kansas bank when the actual securities are being kept by a non-affiliated out-of-state bank. Public funds may not be deposited in a bank which is owned by the same holding company that owns the custodial bank pursuant to K.S.A. 1992 Supp.9-1405(b). Finally, banks with common controlling shareholders, or an overlap of a majority of the board of directors, or common directors having the ability to directly or indirectly control both institutions, would be prohibited from safekeeping pledged securities for each other pursuant to K.S.A. 9-1405(b) and 75-4218(b)(2).
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Mary Jane Stattelman Assistant Attorney General
RTS:JLM:MJS:bas